IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2017 SEP 15  PM 1:58

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____DM_____
DEPUTY

THOMAS C. SISOIAN,
          **Plaintiff,**

-vs-

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
          **Defendant.**

CAUSE NO.:
A-14-CA-00565-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant International Business Machines Corporation (IBM)'s Motion to Exclude Expert Testimony of William C. Easttom II [#238]; Defendant IBM's Motion to Exclude Expert Testimony of Dr. Kevin Almeroth [#243], Plaintiff Thomas C. Sisoian (Sisoian)'s Response [#260] in opposition; Defendant IBM's Reply [#265-1] in support; as well as Defendant IBM's Motion for Summary Judgment [#245]; Plaintiff Sisoian's Response [#251-2] in opposition, and Defendant IBM's Reply [#262-1] in support.[1]  Having considered the case file and the applicable law, the Court enters the following opinion and orders.

### Background

This is a misappropriation-of-trade-secrets case.  In 1997, Plaintiff Thomas Sisoian founded Objectiva Innovations, Inc. (Objectiva) to develop the "Objectiva Architecture," an information software system for use in the telecommunications or other industries.  Sisoian joined IBM in March 1998, after failed attempts to sell or license the Objectiva Architecture.

---

[1] The Court also considered Sisoian's motions for leave to file documents under seal [##248, 251], IBM's motions for leave to documents under seal [#262, 265], IBM's motion for leave for extension of time [#257], and Sisoian's motions for leave to file additional exhibits to its response [##252–255], which it hereby GRANTS.

Francis Anderson was an employee of Objectiva through August 1999.  Anderson helped develop the Objectiva Architecture software and architecture.  Anderson left Objectiva to join IBM on September 1, 1999.  Between September 1, 1999 and May 30, 2000, Anderson continued to work with Sisoian to commercialize the Objectiva Architecture.  During this time, Anderson wrote thousands of lines of new source code, adding new classes and modifying existing classes.  Sisoian and Anderson's continued efforts to commercialize the Objectiva Architecture were ultimately unsuccessful.  In October 2000, Objectiva dissolved, and all assets were distributed to Sisoian as the sole shareholder.

Sisoian alleges Anderson fraudulently obtained a copy of the Objectiva Architecture from former Objectiva employee, James Hartmann, and disclosed the copy to IBM.  IBM allegedly used the Objectiva Architecture to secretly develop an IBM product called the WebSphere Telco Content Pack (WTCP), which IBM successfully marketed and sold.

In April 2013, Sisoian filed this lawsuit against IBM.  Sisoian asserts claims of misappropriation of trade secrets in the Objectiva Architecture and breach of Anderson's fiduciary duty to Objectiva.

## Analysis

### I.      Defendant IBM's Motions to Exclude

Defendant IBM filed two motions to exclude testimony of Plaintiff Sisoian's experts William C. Easttom II and Dr. Kevin Almeroth.  Def.'s Mot. Exclude Easttom II [#238]; Def.'s Mot. Exclude Almeroth [#243].

The Court dismisses IBM's motions to exclude without prejudice to re-urging at trial.  As is this Court's practice, it does not rule on *Daubert* motions on paper and in the abstract but rather waits until trial when the admissibility of the witnesses' testimony can be assessed in

context.  All trials on this docket are "on the clock."  When a *Daubert* objection is lodged during trial, the Court will recess the jury, listen to the testimony, and make a ruling consistent with the evidence being presented in trial.  If the *Daubert* objection is sustained, the time necessary to hear the testimony of the witness outside the presence of the jury will be subtracted from the presenter of the witness.  If the *Daubert* objection is overruled, the time consumed by listening to the witness outside the presence of the jury will be deducted from the objector.

## II.     Defendant IBM's Motion for Summary Judgment

## A.      Legal Standard

### 1.      Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

3

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.    Application**

**1.    Statues of Limitations[2]**

IBM argues Sisoian's claims are barred by the statutes of limitations. Specifically, IBM asserts Sisoian was on inquiry notice by November 2007 based on Sisoian's repeated discussions with Hartmann—the person Sisoian alleges gave a copy of the Objectiva Architecture to

---

[2] The Court previously addressed the relevant statutes of limitations and the applicability of the discovery rule in its earlier order. *See* Order of Aug. 18, 2017 [#74]. In that order, the Court determined the statutes of limitations is three years for common law trade secret misappropriation and TTLA theft of trade secret are three years, and four years for breach of fiduciary duty.

Anderson—during 2004 to 2006, a 2007 notice IBM sold the product Sisoian claims misappropriates his trade secrets, and regular IBM emails from 2007 to 2008 detailing IBM's telecom offerings with "flexible architecture." Mot. Summ. J. [#245] at 9–10. Based on this evidence, IBM asserts the discovery rule ceased to toll limitations by 2008, five years before Sisoian filed his lawsuit and after the limitations on all Sisoian's claims expired. *Id.*

Sisoian points out IBM previously moved for summary judgment on this same statutes of limitations issue relying on the same record evidence and law. Resp. [#251-2] at 5-6 (referencing Def.'s Mot. Summ. J. [#124]). After briefing by the parties, the Court overruled IBM's motion for summary judgment without prejudice because it involved a factual issue for the jury. Order of Mar. 24, 2016 [#179].

The Court's position on this issue has not changed. The discovery rule defers the accrual of a cause of action until the plaintiff knew, or in exercising reasonable diligence should have known, of the wrongful action causing injury. *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001). Actual knowledge is not required, but instead the question is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights. *Id.* While the Court acknowledges the evidence IBM has raised on this issue, what Sisoian knew or should have known prior to 2008 remains a genuine dispute of a material fact that is not appropriate for summary judgment. Thus, the Court again overrules IBM's summary judgment on statutes of limitations without prejudice to present this evidence and theory to the jury at trial.

## 2.    Ownership of the Alleged Trade Secret

IBM argues Sisoian does not own any trade secret, barring Sisoian's misappropriation claim. Specifically, IBM contends (1) the Objectiva Architecture source code is a joint work co-

owned by Sisoian and Anderson, (2) Sisoian does not own portions of the Objectiva Architecture source code written after August 1999, and (3) Sisoian has not identified any Objectiva "know-how" he could own.  The Court addresses each of these arguments in turn.

### i.    Objectiva Architecture Source Code as a Joint Work

The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  "The authors of a joint work are coowners of copyright in the work."  17 U.S.C. § 201(a).

IBM asserts Sisoian does not own exclusive rights to the Objectiva Architecture source code because the code was a joint work under the Copyright Act.  Mot. Summ. J. [#245] at 11-13.  Specifically, IBM argues Anderson wrote substantial and independently copyrightable Objectiva Architecture source code after his employment with Objectiva ended in August 1999.  Anderson's work, IBM contends, was done with Sisoian's knowledge and consent in order to create an enhanced single work known as the Objectiva Architecture.  According to IBM, Anderson believed he and Sisoian were partners, and Anderson completed his work without pay expecting he would share in any proceeds attributable to the Objectiva Architecture.  As an author of the joint work, IBM submits Anderson is a co-owner of the Objectiva Architecture source code such that Sisoian lacks exclusive ownership in the copyright of the code and therefore cannot assert trade secret in the same.  Sisoian counters IBM has failed to show the requisite mutual intent to be joint authors.

The Court agrees that IBM has failed to establish both Sisoian and Anderson intended to create a joint work in the entire body of Objectiva Architecture source code.  In essence, IBM seeks to create a joint work of source code created during and after Anderson's employment at

Objectiva Innovations. A joint work "requires that each author intend the merger *at the time the author prepares his or her contribution.*" *Batiste v. Island Records Inc.*, 179 F.3d 217, 222 n.7 (5th Cir. 1999) (emphasis added). The earlier source code was prepared during Anderson's employment at Objectiva. IBM has not identified evidence of Sisoian's intent during this time. It is unclear Anderson's post-employment work was ever anticipated when the earlier source code was developed, and much less evident Sisoian, at that earlier time, intended the source code be merged into inseparable or interdependent parts of a unitary whole with Anderson's later work. Setting aside the temporal considerations, IBM's evidence and argument focuses primarily on Anderson's intent to create a joint work, largely ignoring Sisoian's intent to do the same. While the Court recognizes objective manifestations are often necessary to prove one's intent, the cited evidence falls short of establishing no reasonable jury could return a verdict in favor of Sisoian on this issue. For these reasons, the Court finds IBM has failed to establish as a matter of law that the entire body of Objectiva Architecture source code is a joint work co-owned by Sisoian and Anderson.

### ii.    Post-1999 Objectiva Architecture Source Code

The Court turns now to the copyright ownership in the Objectiva Architecture source code created after Anderson's employment ended in August 1999.[3] IBM argues Sisoian does not own portions of the Objectiva Architecture source code Anderson wrote after August 1999, and therefore any such code cannot be part of Sisoian's misappropriation claim. Sisoian counters Objectiva Innovations owns Anderson's post-employment code because of three written agreements.

---

[3] The record and briefing in this case reflect multiple versions of the Objectiva Architecture source code. Each version of the source code is a separate work under the Copyright Act. *See* 17 U.S.C. § 101 (defining a copyright "work" and stating "where the work has been prepared in different versions, each version constitutes a separate work").

Anderson's post-August 1999 contributions are a derivative work under the Copyright Act. *See* 17 U.S.C § 101 (defining a "derivative work" as "a work based upon one or more preexisting works" consisting of "editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship"). IBM presents Anderson's 91 new classes comprising 7,000 new lines of code in addition to modifying 153 existing classes as independently copyrightable work made with Sisoian's knowledge and consent. Mot. Summ. J. [#245] at 12 n.6. Sisoian does not dispute Anderson's contributions, and in fact acknowledges these contributions were made to obtain Tivoli's investment in or purchase of the Objectiva Architecture. *See* Resp. [#251-6] (Sisoian Decl.) ¶ 16. Thus, Anderson's post-August 1999 additions and modifications to the Objectiva Architecture source code are a copyrightable derivative work.

Anderson acquired copyright in his derivative work as a matter of law. *Schrock v. Learning Curve Intern., Inc.*, 586 F.3d 513, 523 (7th Cir. 2009) (stating that "copyright in a [permitted] derivative work, like copyright in any other work, arises by operation of law"); *see also* 17 U.S.C. § 201(a) (stating copyright ownership "vests initially in the author or authors of a work"). However, Anderson's copyright "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b). Also, Anderson's copyright in his derivative work "does not affect or enlarge" Sisoian's copyright protection in the preexisting material. *Id.*

Contrary to Sisoian's representations, the three agreements cited in his briefing do not entitle Sisoian or Objectiva to Anderson's copyright in his post-August 1999 work. First, Sisoian references "Anderson's employment agreement, assigning all intellectual property to Objectiva, Inc." Resp. [#251-2] at 9. Sisoian does not present a completed or signed copy of

Anderson's actual employment agreement, but instead relies on draft agreements of other Objectiva employees. *See* Sisoian Decl. ¶ 7 (citing employment agreements in [#255-11-14] Exs. 55-58). Even assuming Anderson signed one of these draft agreements, the agreements contain no assignment or transfer of post-employment copyright rights. Second, Sisoian references "Anderson's IP separation agreement with IBM." Resp. [#251-2] at 9 (citing [#255-18] Ex. 62 (IBM Agreement)). This agreement assigns no rights to Sisoian or Objectiva, but instead lists the Objectiva Architecture as a development Anderson "ha[s] any right, title, or interest, which were previously conceived or written either wholly or in part by me." IBM Agreement at 3. Third, Sisoian references an alleged non-disclosure agreement with Tivoli. Resp. [#251-2] at 9 (citing Sisoian Decl. ¶ 16). The cited portion of Sisoian's declaration merely references business discussions conducted "pursuant to a non-disclosure agreement," the contents of which are not elaborated or produced. *See* Sisoian Decl. ¶ 16. In sum, the Court finds no factual or legal basis for concluding Sisoian or Objectiva owns any rights to Anderson's derivative work.

Sisoian cannot rely on another party's copyright for his misappropriation claim. *See Applogix Dev. Group, Inc. v. Dall. Cent. Appraisal Dist.*, 3:05-CV-1105-H, 2006 WL 2482958, at \*5 (N.D. Tex. Aug. 29, 2006); *Complete Pharmacy Res., Ltd. v. Feltman*, CIV.A. H-04-3477, 2005 WL 1949540, at \*6 (S.D. Tex. Aug. 12, 2005). Thus, Sisoian's misappropriation claims based on Objectiva Architecture source code are limited to versions of the source code to which he owns the copyright. The Court's finding on this issue does not warrant dismissal of Sisoian's misappropriation claims based on the Objectiva Architecture source code because there are other versions of the source code to which Sisoian owns the copyright.

### iii.    Objectiva "know-how"

IBM challenges Sisoian's claim to a trade secret "know-how" relating to the Objectiva Architecture source code.  Mot. Summ. J. [#245] at 14-15.  IBM argues Sisoian has failed to identify any specific detail of the trade secret apart from Anderson's general knowledge and experience gained throughout his career, none of which can be protected as a trade secret.

The Court overrules IBM's challenge because a jury could reasonably conclude at least some knowledge in the use of Objectiva Architecture source code is a trade secret.  For instance, Anderson agreed in his deposition that "operating the Objectiva software requires knowing the Objectiva domain-specific language . . . [and] knowing how to create inputs that Objectiva understands."  Resp. [#252-7] Ex. 5 (Anderson Dep.) at 69:3-10.  Former Objectiva employee, Viral Patel, described the "need to feed [Objectiva] a configuration and data so that it knows how to behave."  Resp. [#252-4] Ex. 2 (Patel Dep.) at 122:12-19.  However, Sisoian will not be able to rely on general skills, knowledge, and experience known in the field or acquired by Objectiva employees as the basis of his trade secret, and the Court intends to instruct the jury to this effect. *See Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1199 (5th Cir. 1986); *Applogix*, 2006 WL 2482958, at *5.

### 3.    Requirements of Misappropriation

IBM submits three final arguments on why Sisoian cannot meet the elements of his misappropriation claims.  First, IBM asserts Sisoian cannot prove the existence of a trade secret because Sisoian has not specifically identified any alleged trade secret.  Mot. Summ. J. [#245] at 15-16.  This argument fails because IBM agreed to the definition of the trade secret in this case. *See* Advisory [#110].  Moreover, as explained above, Sisoian has identified evidence of potential

trade secret rights in some Objectiva Architecture source code and the know-how of using and configuring this software.

Second, IBM argues the Objectiva Architecture in not a trade secret because Sisoian has failed to guard its secrecy. The parties have presented competing evidence and arguments raising a genuine dispute of material fact as to the sufficiency of Sisoian's efforts to safeguard his alleged trade secrets. *See* Mot. Summ. J. [#245] at 16-18; Resp. [#251-2] at 12-19. Whether these efforts were sufficient is a question of fact for the jury to decide.

Third, IBM contends it did not have actual or constructive notice of any alleged breach of duty by Anderson. IBM concedes its 1998 agreement with Sisoian identified the Obejectiva Architecture and Objectiva's ownership interest in the same. Reply [#262-1] at 8. Anderson identified the Objectiva Architecture in his IBM employment agreement signed September 1, 1999 as developments not to be assigned to IBM. *See* IBM Agreement at 3. IBM does not dispute it evaluated purchasing the Objectiva Architecture in 2000. Based on this and other evidence identified by Sisoian, a reasonable jury could conclude IBM was on notice of Anderson's duty to Objectiva and that such duty was breached.

In sum, IBM's arguments challenging Sisoian's ability to meet other elements of misappropriation are overruled because they involve genuine disputes of material fact.

## Conclusion

At trial, Sisoian may assert trade secret in the Objectiva Architecture source code in which he owns the copyright as well as know-how in the use of this source code. IBM is permitted to challenge Sisoian's alleged trade secrets and the alleged misappropriation of the same. IBM may also argue its defense of statutes of limitations to the jury.

Accordingly,

IT IS ORDERED that Defendant IBM's Motion to Exclude Expert Testimony of William C. Easttom II [#238] and its Motion to Exclude Expert Opinion Testimony of Dr. Kevin Almeroth [#243] are DISMISSED WITHOUT PREJUDICE to re-urging at the time of trial;

IT IS FURTHER ORDERED that Defendant IBM's Unopposed Motion for Leave for Extension of Time to File Reply [#257] is GRANTED;

IT IS FURTHER ORDERED that the parties' Motions for Leave to File Under Seal [##248, 251-255, 262, 265] are GRANTED; and

IT IS FINALLY ORDERED that Defendant IBM's Motion for Summary Judgment [#245] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the _15th_ day of September 2017.

_Sam Sparks_
UNITED STATES DISTRICT JUDGE